IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NRFC PHILMONT HOLDINGS, LLC | : | CIVIL ACTION |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | NO. 12-7019 |
| | : | |
| v. | : | |
| | : | |
| AWEBER SYSTEMS, INC. | : | |
| | : | |
| Defendant/Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| 3103 PHILMONT ACQUISITION PARTNERS, | : | |
| L.P. a/k/a 3103 PHILMONT ACQUISITION, L.P. | : | |
| | : | |
| Third Party Defendant | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                                          April 16, 2014
UNITED STATES MAGISTRATE JUDGE

**I.     BACKGROUND**

This matter came before the Court for a non-jury trial on March 17, 2014. We heard three full days of testimony, gave consideration to post-trial filings (Doc. Nos. 67-69), and on April 2, 2014, heard closing argument. The matter is now ripe for resolution. As the background and underlying circumstances of the case are well known to the parties, we abbreviate our discussion to the conclusions we have reached and the basis for them.

NRFC Philmont Holdings, LLC (alternately "Plaintiff" or "NRFC") has brought a single-count breach of contract claim against AWeber Systems, Inc. ("AWeber"), its tenant, for AWeber's failure to pay the last 18 months of rent due under a five-year lease that ran from June 14, 2009 to June 14, 2014. (Doc. No. 1.) AWeber had entered into the lease with NRFC's

predecessor, 3103 Philmont Acquisition Partners, L.P. a/k/a 3103 Philmont Acquisition, L.P. ("3103"). (Joint Exh. 1.) NRFC, 3103's lender, became owner and lessor on December 8, 2011 by virtue of accepting a Deed in Lieu of Foreclosure and an assignment of the lease. (Joint Exh. 8.) The leased premises consisted of approximately 24,000 square feet of a 70,000-plus square foot building at 3103 Philmont Avenue, Huntingdon Valley, Pennsylvania. (Joint Exh. 1.)

AWeber denies that it has any liability for breach of contract and asserts affirmative counterclaims against NRFC for breach of the covenant of quiet enjoyment and constructive eviction, asserting that NRFC, and 3103 before it, failed to provide a premises that was suitable for its purposes. (Doc. Nos. 9, 12.)

AWeber also brought a contribution and indemnification claim against 3103 where it asserts that should we find that it is liable to NRFC on its breach of contract claim, it is entitled to contribution and/or indemnification from 3103 due to the former owner's failure to provide a proper HVAC system, depriving AWeber of its contractual right to quiet enjoyment of the property pursuant to the lease agreement. (Doc. No. 12.)

## II.  DISCUSSION

### A.  Contract Claims and Counterclaims

For the reasons set forth below, we find in favor of NRFC on its contract claim and award damages in the amount of $572,741.28 for its loss of rent and Common Area Maintenance ("CAM") fees, and $28,637.06 for late fees.[1] For the same reasons that we find in favor of NRFC on its contract claim, we also find for NRFC and against AWeber on AWeber's counterclaims. We also find against AWeber and in favor of 3103 on the third-party joinder claim which AWeber has asserted against 3103. These findings relate to our conclusions about

---

[1] We accept the calculation of lost rent and CAM fees as set out, without opposition, by NRFC's expert Reaves C. Lukens, III. (Plaintiff's Exh. 19 at 21.)

the conditions of the tenancy leading to AWeber's persistent complaints.

Fundamentally, there is no question that Plaintiff was deprived of the loss of its rent and CAM charges from AWeber for AWeber's separation from the property. The question over NRFC's entitlement on its contractual claim centered around the breach of quiet enjoyment and constructive eviction claims which AWeber asserted against NRFC. If AWeber were to prevail on those claims, it would also prevail on its defense of NRFC's claim. To make out its claims, AWeber must establish that its landlords either "block[ed] [its] access to the premises" – which it clearly did not – or "chang[ed] some essential aspect of the premises so substantially as to render the property unsuitable for the purposes for which it [was] leased." *North Wales Associates, Inc. v. Intown Properties, Inc.*, 152 F. Supp.2d 643, 645-46 (E.D. Pa. 2001).

AWeber claims, and certainly presented some credible evidence, that during all or most of its tenancy it suffered adverse conditions due principally to excessive heat and cold from the HVAC system and that the consequence of these conditions justified its decision to quit the premises, which it did, without notice to NRFC on the overnight hours of December 5-6, 2012.[2] AWeber has presented testimony principally through its two most senior officers, Tom Kulzer and Sean Cohen. They testified that they received frequent complaints from employees about the HVAC and pointed out that these complaints were regularly memorialized in e-mails directed over the years to 3103 or NRFC or contractors engaged by these parties for the purpose of building management and maintenance issues. NRFC and 3103 concede that there were, in fact, HVAC problems, but they assert that the problems were addressed in a timely and professional manner. They also take the position that the complaints were to a large extent anecdotal and did not significantly interfere with AWeber's tenancy such as to meet the standard of rendering the

---

[2] AWeber also asserted that the property was subject to certain rodent infestation. They did not, however, establish that this condition was other than a temporary problem dealt with by the lessors.

premises "unsuitable for the purposes for which it [was] leased." *Id.*

NRFC and 3103 introduced persuasive and uncontested evidence to show that AWeber's business thrived during its three and half years of its occupancy as both its profits and its head count grew significantly. They also introduced evidence to show that AWeber had never withheld rent, or even threatened to do so, and never engaged in self-help by undertaking its own repairs and charging these costs against the rent.[3] AWeber also expressed real interest in purchasing not just the leased premises, but the entire NRFC property. AWeber even engaged the services of a real estate broker and made three separate offers for significant sums – $4.4 million in October 2010, $5.0 million in February 2011, and $4.9 million in December 2011 (after an inspection showing a need for some repair in late November or early December 2011). NRFC and 3103 also established that their principals and contractors responded promptly to AWeber's complaints on what were apparently many occasions, and while they were unable to provide the immediate relief AWeber sought, they were responsive to these complaints and made meaningful efforts to remedy whatever problems there may have been.

I am satisfied that 3103 and NRFC responded to the most significant problems with the HVAC by undertaking major overhaul before the actual occupancy of the premises began in June 2009 and again in the first six months of 2012 when an older boiler failed. I am also satisfied on the evidence offered that AWeber has failed to establish that its separation from the premises was justified. Both NRFC and 3103 have presented us with authority to demonstrate that constructive eviction can be established only where the tenant shows that "the utility of the

---

[3] Where applicable, a tenant may "defend an action for rent due . . . by alleging the landlord's breach of warranty of habitability." *Pawco, Inc. v. Bergman Knitting Mills, Inc.*, 424 A.2d 891, 895 (Pa. Super. Ct. 1980). A finding of breach would entitle the tenant to a pro rata reduction of rent. *Id.* at 893-94. The implied warranty of habitability does not however extend to commercial leases, *Id.* at 895, so AWeber is precluded from asserting such a claim. AWeber has conceded the point. (Doc. No. 69 at 7.)

premises [has been] *substantially decreased*," *Jonnet Development Corp. v. Dietrich Industries*, 463 A.2d 1026, 1033 (Pa. Super. Ct. 1983) (emphasis in original), and that AWeber must show the "depriv[ation] . . . of the beneficial enjoyment of all or part of the leased premises in such a way as to manifest an intention to hold the premises adversely to the tenant." (Doc. No. 67 at 2) (citing *Kahn v. Bancamerica-Blair Corp.*, 193 A. 905, 906 (Pa. 1937)).  AWeber has failed to meet this high standard.  I find for NRFC on its breach of contract claim.  For the same reasons, I have concluded that AWeber has also failed to establish its constructive eviction claim.

   **B.**  **Contribution and Indemnification Claim**

  I now turn to a consideration of the contribution and indemnification claim that AWeber has asserted against 3103.  (Doc. No. 12 at 8-10.)  I agree with 3103 that the contribution claim fails as a matter of law.  Contribution only arises in a tort context, not present here, where the claims are predicated upon breaches of the lease.  AWeber has conceded the point.  (Doc. No. 69 at 9.)

  With respect to the claim for indemnification, AWeber's claim fails fundamentally because it seems to imply that the right of indemnity is a "fault sharing mechanism" as opposed to a "fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Siranni v. Nugent Bros., Inc.,* 506 A.2d 868, 871 (Pa. 1986).  Further, a party who seeks indemnification must be able to demonstrate that it had no part in causing the harm.  *Id.* at 871-72.  These circumstances are not present here, where the harm for which AWeber has become liable is of its own doing by failing to pay the rents and CAM fees due.  Further, any form of indemnification or contribution by NRFC relating to difficulties which brought about the separation of the tenancy in December 2012 cannot be

found to have been caused or contributed to by the conduct of 3103, who had no connection with the property for a period of one year before the separation.  We do not find on the record before us any circumstance that would factually support a claim for contribution or indemnification from 3103 even if it was determined that there was a proper legal basis for that claim to go forward.

        **C.**       **Diminution of Value of the Property**

At the conclusion of the testimony on March 19, 2014, the Court raised a question with respect to the testimony of AWeber's rebuttal damage expert, Maureen Mastroieni.  The question was whether the circumstance that AWeber would likely **have not** renewed its lease in June of 2014 would have mitigated any diminution of value which may have been caused by AWeber's wrongful breach in December 2012.  Ms. Mastroieni testified that if there was any impact upon the valuation of the property by AWeber's departure, it was well known among commercial real estate professionals that AWeber would likely not be renewing the lease.  At closing argument, I was reminded by counsel for NRFC that Reaves C. Lukens, III, who provided a comprehensive analysis of the impact of the loss of this leasehold upon the value of the property as a whole, took into account the knowledge in the public domain as of March 2012 (Plaintiff's Exh. 19 at 21) of the near certainty that AWeber would not renew the lease in June of 2014.  This mollifies my concern and I accept that the breach would bring about a reduction in the value of the property.  The only opinion that I have been offered is from Mr. Lukens who has assigned a sum of $347,168.00 which represents 7.71% of the assessed value of the property before the breach. (Plaintiff's Exh. 19 at 36.)  I accept that sum.

## III. CONCLUSION

For the reasons set forth above, I find in favor of NRFC and against AWeber on NRFC's cause of action of breach of contract, in favor of NRFC and against AWeber on AWeber's counterclaims, and in favor of 3103 and against AWeber on AWeber's claims of breach of contract, constructive eviction, and contribution/indemnification. I award a total of $948,546.34 in damages to NRFC. A separate judgment order follows.

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE