4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NRFC PHILMONT HOLDINGS, LLC | : | CIVIL ACTION |
| Plaintiff/Counterclaim Defendant, | : | NO. 12-7019 |
| v. | : | |
| AWEBER SYSTEMS, INC. | : | |
| Defendant/Counterclaim Plaintiff, | : | |
| v. | : | |
| 3103 PHILMONT ACQUISITION PARTNERS, L.P. a/k/a 3103 PHILMONT ACQUISITION, L.P. | : | |
| Third Party Defendant | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                                                August    1, 2014
UNITED STATES MAGISTRATE JUDGE

Presently before the Court are two motions for counsel fees and costs brought by prevailing parties NRFC Philmont Holdings, LLC ("NRFC") and 3103 Philmont Acquisition Partners L.P. ("3103").  See Doc. Nos. 75 & 74.  AWeber Systems, Inc. ("AWeber") responded to these motions, see Doc. Nos. 77 & 76, and 3013 filed a reply. See Doc. No. 78.  Both NRFC and 3103's motions seek an award for attorneys' fees and costs, asserting that as the prevailing parties they are entitled to "recover all reasonable fees, costs and expenses, together with reasonable attorneys' fees incurred" under Section 29 of the lease.  See Doc. 74, Ex. B (Lease §29).

AWeber contends that because it consistently attempted to minimize costs throughout the litigation, NRFC and 3103 should be precluded from recovering attorneys fees as a matter of equity. AWeber also asserts that should we assess fees against them, we should – at least to the NRFC petition – reduce the rate considerably and reject assessments on these matters not properly documented. Having considered these arguments, the matter is now ripe for resolution.[1]

Suffice it to say that we find that NRFC was, in fact, a prevailing party on both its breach of contract claim and the claims brought against it by AWeber.[2] Similarly, 3103 was a prevailing party on the contribution and indemnification claim AWeber brought against it. It is also the case that when AWeber (together with 3013 and later NRFC) entered into the lease, it knowingly accepted the proposition that should a dispute arise bringing about a "legal or equitable action . . . the prevailing party shall be entitled to recover all reasonable fees, costs and expenses, together with reasonable attorneys' fees incurred in connection with such action." *See* Lease, §29. Doc. No. 74, Ex. B at 17.

We have considered AWeber's contention that its purported efforts to minimize costs should relieve it from a counsel fee obligation. We reject that argument. Simply stated, there is nothing in the attorneys' fees provision that precludes the prevailing party

---

[1] As we write only for the parties, who are well aware of the background and circumstances leading to this litigation as well as our resolution of the dispute memorialized by our April 16, 2014 Memorandum Opinion (Doc. No. 71), we reference only those facts needed to resolve these counsel fee petitions.

[2] A party prevails when it has obtained relief on a significant claim in the litigation and is able to show that there is a causal connection between the litigation and the relief obtained. *See Profit Wize Marketing v. West*, 812 A.2d 1270 (Pa. Super. Ct. 2002). *See also Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh*, 964 F.2d 244, 250 (3d Cir. 1992).

from its entitlement to fees merely because the conduct of the opposing party may have intended to minimize costs.[3]

AWeber then argues that equity should preclude both AWeber and 3103 from recovering attorneys' fees, because (citing our Memorandum Opinion, of April 16, 2014), AWeber did present "*some* credible evidence that during all or most of its tenancy, it suffered adverse conditions due principally to excessive heat and cold from the HVAC system." *See* Doc. No. 77 at 1; Doc. No. 76 at 1 (emphasis added). Nonetheless, we concluded for the several reasons set out in our Opinion that AWeber "failed to establish that separation from the premises was justified." *See* Doc. No. 71, Mem. Op., at 4. The fact that AWeber may have presented "some credible evidence" of adverse conditions cannot be said to render meaningless the agreed upon contractual term.

We now turn to the question of reasonableness. AWeber argues initially that the rates sought to be confirmed as reasonable by NRFC's counsel were not, in fact, reasonable under the circumstances. AWeber also argues that there should not be reimbursement for certain tasks to the extent that they constituted overhead or clerical work, lacked adequate description, or as to a small component, should not have been performed in any event.

---

[3] While the Court does not predicate its conclusion upon this circumstance, we would be remiss if we did not observe that AWeber could well be said to have been the more culpable party in protracting the litigation. It unnecessarily pursued improper limitations upon methods of discovery of its financial condition which required court intervention on more than one occasion. It also sought to disqualify opposing counsel for reasons which we concluded had no merit.

We consider these questions against the backdrop of the standard appropriate for the assessment of attorneys' fees. Our Court, in assessing a fee petition governed by Pennsylvania law, set out the following to be taken into account:

> the amount and character of the services rendered; the labor, time and trouble involved; the character and importance of the litigation; the amount of money or value of property affected; the professional skill and experience called for; the standing of the attorney in his profession; and the pecuniary benefit derived from the success.

*Nationwide Energy Corp. v. Kleiser*, Civ. A. No. 84-3517, 1987 WL 10655, *3 (E.D. Pa. May 7, 1987). By this standard, we conclude that both Mr. Quaglia for NRFC and Mr. Lipsky for 3103 conducted themselves in a highly competent manner, demonstrated the professional skill and experience called for and certainly achieved substantial benefit for their clients, all of which incline us to look favorably upon their petitions.

AWeber raises a particular concern, however, over Mr. Quaglia's rates and argues that they cannot be considered "reasonable." We see this as a legitimate concern but one which begs the question by whom is this reasonableness to be measured? Does "reasonable attorneys' fees" mean reasonable to NRFC and 3103, reasonable to AWeber, or is it measured upon a more generalized reasonableness standard? Are the $325 to $370 rates in the Community Legal Services guidelines reasonable here? Is the $450 rate suggested by Mr. Krekstein in his affidavit reasonable? We consider this question in accordance with contract interpretation and consider what these parties would have intended and considered reasonable under the circumstances of this case.

The parties here are sophisticated business entities.  They engage in significant business matters.  From the outset of this dispute, the size and resources of the respective parties were evident to all those involved.  AWeber presented NRFC's 2012 Annual Report among its exhibits and pointed out in its briefing that NRFC raised $600 million in capital during 2012.  *See* Doc. No. 77 at 9 & Ex. H.  AWeber demonstrated at trial that it was a young but rapidly growing business.  It engaged professional services in its lease negotiations.  It took professional advice in the decisions it made to defend and pursue counterclaims and cross-claims in its litigation.

With this in mind, it is appropriate that the reasonableness of attorneys' fees and the parties' intentions should be viewed from the context of what the parties knew about each other at the time of the conduct that gave rise to the litigation.  AWeber knew or should have known that it was dealing with an established national corporation that undoubtedly had the resources to bring legal action against AWeber.  It accepted the risk that its decision to separate from the property when it did would bring a response from NRFC.  It knew the same when it brought counterclaims against NRFC and asserted its cross-claims against 3103, protracting this litigation.  In that light we ask, would it be reasonable for AWeber to have expected that NRFC would hire a distinguished attorney from a large commercial litigation firm to litigate this dispute?  We consider this a reasonable expectation which gives effect to the intention of the parties.  *See, e.g., Sun Co. Inc. (R & M) v. Pennsylvania Turnpike Comm'n*, 708 A.2d 875, 878 (Pa. Cmwlth. Ct. 1998) ("The fundamental rule in constructing a contract is to ascertain and give effect to the intention of the parties.").

Looking then to the issue of Mr. Quaglia's hourly rates of $650 per hour for work done in 2013 and $660 per hour for work done in 2014, we certainly appreciate that it is a healthy sum.  But, absent any information to the contrary, we accept that NRFC and Ballard Spahr reached an agreement on the rate that would be charged for Mr. Quaglia. NRFC accepted that rate, and we assume paid its fees.  We accept that the result obtained by Mr. Quaglia and Ballard Spahr constituted a significant award to the benefit of its client.  The firm demonstrated a high degree of skill and Mr. Quaglia ably presented himself.  We also take into account the affidavit offered by Mr. Krekstein on behalf of AWeber expressing his view that the maximum hourly rate for this type of ligitation should be $450 per hour.  His opinion, however, is limited by inherent bias (as a partner in AWeber's law firm) and not supported by any particulars.  We also find that the fee range of $325-$370 per hour suggested by Community Legal Services, and relied upon by AWeber, is not the reasonable range for us to base our decision considering the surrounding circumstances of this case.  On the basis of all of these considerations and our balancing of the issues, we decline to reduce Mr. Quaglia's rates and do not hold them to be excessive.

We turn to AWeber's allegation that NRFC's billings included some overhead and clerical work.  Having reviewed the provided billing reports from Ballard Spahr, it does not appear to us that the billings for Y.M. Yip, apparently a document management professional, would be improper.  This litigation involved thousands of documents and data for potential use at this trial, the access of which was essential for the litigators involved in this issue.  Y.M. Yip's billing with respect to preparation of these documents

is acceptable in our view. It is therefore our determination that the hours billed by Ballard Spahr for these tasks are reasonable.

Next we consider AWeber's challenge to specific billing entries that it alleges to be inadequately vague. The U.S. Supreme Court has observed in the statutory fee context that "[w]here the documentation of hours in inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The challenged entries in this instance generally refer to billing reports for document review in preparation for various productions. We would be remiss if we did not acknowledge that this litigation involved over 170 exhibits that were presented to us pretrial. While the parties did not use many of these documents during trial, the numbers indicate the magnitude of documents that were involved that required extensive review. We accept this need for this review by the billers as indicated in Ballard Spahr's petition. With that in mind, we refuse to modify or strike all of the entries that AWeber has presented to us for consideration. We do, however, find the specific entries on Oct. 11, 2013, Oct. 14, 2013, Oct. 17, 2013, and Oct. 18, 2013, billed by "Thompson" that simply state "Document Review," to be inadequately vague. We will strike these entries from NRFC's attorney's fees, reducing the total by $4,301.00, which accounts for 18.7 hours of work done by Thompson at a rate of $230 per hour.

AWeber also asserted that Ballard Spahr inappropriately billed for the review and revision of the expert rebuttal reports of K. Cestari. We do not accept AWeber's basis for its objection on this matter and accordingly deny any modification of this expense.

We also observe that AWeber has posed no specific objections to the costs and expenses in NRFC's petition. We therefore accept them as submitted.

With respect to the 3103 petition, AWeber has articulated no substantive response other than to repeat its argument made in connection with the NRFC petition that we found that AWeber presented "some credible evidence that . . . it suffered adverse conditions due principally to excessive heat and cold from the HVAC system." We have already rejected that argument and grant Mr. Lipsky's petition as submitted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NRFC PHILMONT HOLDINGS, LLC | : | CIVIL ACTION |
|     Plaintiff/Counterclaim Defendant, | : | NO. 12-7019 |
| v. | : | |
| AWEBER SYSTEMS, INC. | : | |
|     Defendant/Counterclaim Plaintiff, | : | |
| v. | : | |
| 3103 PHILMONT ACQUISITION PARTNERS, L.P. a/k/a 3103 PHILMONT ACQUISITION, L.P. | : | |
|     Third Party Defendant | : | |

## **ORDER**

**AND NOW**, this 1st    day of August, 2014, upon consideration of "Plaintiff's Motion for Fees, Costs and Expenses" (Doc. No. 75) and "Third Party Defendant, 3103 Philmont Acquisition Partners L.P. a/k/a 3103 Philmont Acquisition, L.P.'s Petition for Attorney Fees as Prevailing Party in this Action" (Doc. No. 74); the responses of Defendant AWeber Systems, Inc. (Doc. Nos. 77 and 76); and the reply of 3103 Philmont (Doc. No. 78); and for the reasons stated more fully in the accompanying Memorandum Opinion, it is hereby **ORDERED** as follows:

      1. NRFC's motion (Doc. No. 75) is GRANTED IN PART AND DENIED IN PART. AWeber Systems, Inc., SHALL PAY to NRFC the sum of $411,179.32 for NRFC's fees, costs and expenses as a prevailing party in this matter; and

2. 3103 Philmont Acquisition Partners, L.P.'s motion (Doc. No. 74) is GRANTED.  AWeber Systems, Inc., SHALL PAY to 3103 Philmont the sum of $38,818 for 3103 Philmont's fees, costs and expenses as a prevailing party in this matter.

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
United States Magistrate Judge